IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                   :
JANET FRANCIS,                     :      HON. JEROME B. SIMANDLE
                                   :
                Plaintiff,         :      Civil No. 05-4882 (JBS)
                                   :
        v.                         :
                                   :          OPINION
JOINT FORCE HEADQUARTERS           :
NATIONAL GUARD, et al.,            :
                                   :
                Defendants.        :
                                   :
```

APPEARANCES:

Ms. Janet Francis
79 Westwind Way
Westampton, NJ 08060
        Plaintiff pro se

Mark Christopher Orlowski, AUSA
OFFICE OF THE U.S. ATTORNEY
District of New Jersey
402 East State Street
Room 430
Trenton, NJ 08608
        Attorney for Defendants

**SIMANDLE**, District Judge:

I.    **INTRODUCTION**

This matter is before the Court pursuant to its Orders requiring Plaintiff, Janet Francis, to file a more definite statement [Docket Items 63, 101, 110, 124], and Plaintiff's repeated refusals to comply therewith.  As the Court explains in detail below, in the more than three years since this action has been pending, Ms. Francis has failed to file a second amended complaint with factual allegations sufficient to permit

Defendants to answer in good faith, notwithstanding the Court's orders requiring that such a pleading be filed.  For the reasons set forth below, in light of Plaintiff's sustained refusal to file a pleading that complies with the Federal Rules of Civil Procedure and the resultant absence from this action of a pleading to which Defendants can "reasonably prepare a response," Fed. R. Civ. P. 12(e), the Court will "strike the [Amended Complaint]," id., and dismiss this case.

## II.  BACKGROUND

### A.   Plaintiff's Amended Complaint

Plaintiff Janet Francis, who filed this lawsuit pro se, is a former employee of the New Jersey Army National Guard.  She filed this lawsuit on October 11, 2005, naming as Defendants the Joint Force Headquarters National Guard (the "National Guard"), the Department of the Army, and a number of individuals whom the Court assumes are members of the New Jersey National Guard (the "Individual Defendants").  (Am. Compl. at 1.)  Although her pleadings contain almost no factual allegations, it appears that Ms. Francis attempted to assert claims premised upon Defendants' allegedly unlawful employment actions.  The paragraph of the Amended Complaint entitled "Cause of Action," in which Plaintiff attempts to set forth her claims, reads in its entirety:

> Denied me the right to Freedom of Information Act (FOIA), Reprisal, Harassment, discrimination, not given an equal employment opportunity, retaliation, wasn't given a hearing for the adverse action against me, Breach of

> contract, defamation of character, denied promotion,
> didn't complete the procedures outlined in NGR 600-
> 22/ANGI 36-3, didn't meet time frame to investigate
> complaint, unauthorized officer filed documents.

(Am. Compl. at 1-2.)  The Amended Complaint also contains the

phrase "add to cause of action: conspiracy . . ."  (Id. at 1.)

The Amended Complaint contains no factual allegations to flesh

out this list of claims, nor does it state a basis for relief

upon any of these listed items.

　　While Plaintiff properly served the Government Defendants

(the National Guard and the Department of the Army), she failed

to serve the Complaint upon any of the Individual Defendants;

consequently, when Plaintiff moved for default judgment against

the Individual Defendants, the Court denied her motion.  (Docket

Item 62 at 4.)  The Court then granted Defendants' motion to

dismiss, finding that, under the intramilitary immunity doctrine,

it lacked jurisdiction to entertain Plaintiff's claims.  (Id.)

　　Plaintiff appealed the order of dismissal to the Court of

Appeals, which, on March 3, 2008, entered an order affirming in

part and denying in part this Court's judgment.  (App. No.

06-4246, Mar. 3, 2008 Opinion and Judgment.)  The Court of

Appeals held that this Court "properly rejected plaintiff's

motion for entry of default," and likewise affirmed the Court's

dismissal of Plaintiff's claims for monetary relief under the

doctrine of intramilitary immunity, but held that "Francis's

claims for injunctive relief were not barred by the intramilitary

immunity doctrine." (Id. at 3-4.)  The Court of Appeals remanded the matter to this Court for further proceedings as to Plaintiff's claims for injunctive relief, but noted, in light of the absence of factual allegations in Plaintiff's pleadings, that "the District Court may wish to examine the complaint for compliance with Federal Rule of Civil Procedure 8."[1]  (Id.)

### B. Proceedings On Remand

After this docket was reopened, Defendants moved for a more definite statement and to dismiss Plaintiff's claims against the Individual Defendants, and Plaintiff moved for the appointment of pro bono counsel and for the entry of default.  On September 24, 2008, Magistrate Judge Donio entered an order [Docket Item 61] granting Plaintiff's motion for the appointment of pro bono counsel from the Civil Pro Bono Panel.  Shortly thereafter, finding that "the inadequacies of Plaintiff's Amended Complaint prevent [Defendants] from 'reasonably prepar[ing] a response,' Fed. R. Civ. P. 12(e)," the Court granted Defendants' motion for a more definite statement.[2]  (Docket Item 62 at 13.)  The Court

---

[1]  Under Rule 8(a), Fed. R. Civ. P., a pleading purporting to state a claim for relief must contain, inter alia, "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

[2]  The Court also denied Plaintiff's motion for the entry of default.  (Docket Item 62 at 15.)  Additionally, while it observed that, on account of Plaintiff's failure to serve the Individual Defendants, dismissal of the claims against these

explained:

> Plaintiff's Amended Complaint is bereft of facts.
> Plaintiff simply sets forth a laundry list of nonspecific
> grievances – e.g., "Reprisal, Harassment,
> discrimination," (Am. Compl. at 1) – without including
> any factual allegations sufficient to suggest "that the
> pleader is entitled to relief" on any of her claims.
> [Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)] .
> . . . In light of the total absence of factual
> allegations from the Amended Complaint from which the
> Defendants might divine what each Defendant allegedly did
> to Plaintiff and how Plaintiff was harmed by such
> conduct, the Court finds that Defendants "cannot
> reasonably prepare a response" to the allegations in the
> Amended Complaint.  Fed. R. Civ. P. 12(e).
>
> The Amended Complaint is likewise deficient in that it
> fails to provide an adequate "statement of the grounds
> for the court's jurisdiction," as Rule 8(a)(1) plainly
> requires.
>
> Finally, Defendants are correct that Plaintiff's Amended
> Complaint fails to "state [her] claims . . . in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances."  Fed. R. Civ. P. 10(b)

(Id. at 10-12.)  Noting that Plaintiff's motion for the

appointment of pro bono counsel had been granted, but that an

attorney had not yet been appointed, the Court ordered that

Plaintiff "file an amended complaint that conforms with the

requirements articulated in the Federal Rules of Civil Procedure

and the directives set forth herein within twenty (20) days of

the entry of appearance of pro bono counsel, or the Court will

---

Defendants appeared to be appropriate under Rule 4(m), Fed. R.
Civ. P., the Court, exercising "an abundance of caution," denied
Defendants' motion to dismiss these claims "without prejudice to
renewal upon the appointment of pro bono counsel and Plaintiff's
counsel's filing of a second amended complaint."  (Docket Item 62
at 14.)

'strike the pleading' and dismiss this case."  (Id. at 13)
(quoting Fed. R. Civ. P. 12(e)).

On October 14, 2008, the Clerk of Court advised Plaintiff
that attorney Myles Seidenfrau, Esquire, of the Wolf Block law
firm had been appointed as pro bono counsel [Docket Item 64].
Nine days later, Plaintiff wrote to the undersigned [Docket Item
65], requesting that a different attorney be appointed to
represent her.  Ms. Francis stated that she had spoken with Mr.
Seidenfrau and that she was asking him not to enter an appearance
in her case because she was not comfortable with his approach to
the matter.  On October 24, 2008, Mr. Seidenfrau wrote to the
Deputy Clerk, Marnie Maccariella, to advise her that he regretted
he could not proceed as pro bono counsel because Ms. Francis had
informed him that she did not want him to represent her.  The
undersigned responded to Plaintiff in a letter dated October 30,
2008, indicating that the Court would "make one final attempt to
locate pro bono counsel for Ms. Francis."  (Docket Item 70.)

On November 7, 2008, the Clerk's office sent a letter to Ms.
Francis informing her that Frank Corrado, Esquire, was being
appointed to represent her [Docket Item 71].  On November 10,
2008, Ms. Francis filed a letter [Docket Item 71], in which she
complained that the Clerk's letter did not advise her of Mr.
Corrado's name and phone number.  The Clerk's letter of November
7 had indeed advised Ms. Francis of Mr. Corrado's name, and the

name and address of his law firm, although it lacked his phone number.  Meanwhile, Mr. Corrado, together with Joshua Donohue of his firm, entered an appearance on November 10, 2008 [Docket Item 72].  On November 20, 2008, Ms. Francis sent a letter to the undersigned by fax, dated November 19, 2008, indicating that she was not willing to accept Mr. Corrado's appointment as her pro bono attorney.  Plaintiff's letter criticized Mr. Corrado for entering his appearance and alleged that Mr. Corrado and the undersigned had a conversation with regard to her case.  As the Court explained in its December 1, 2008 Order, "Ms. Francis' allegation is false -- I have never spoken with Mr. Corrado about his appointment in this case or any aspect of this case.  It is apparent that Ms. Francis has rejected Mr. Corrado's assistance in this case for her own reasons."  (Docket Item 87 at 4.)

On November 24, 2008, the Court received a letter from Mr. Corrado, dated November 21, 2008 (received on November 24, 2008 and entered on the docket on November 25, 2008) [Docket Item 82], asking the Court's permission to withdraw as counsel for Ms. Francis.  The Court granted Mr. Corrado's request to withdraw in its December 1, 2008 Order, and declined to undertake further efforts to appoint pro bono counsel for Plaintiff, explaining:

> The Court will not direct the Clerk to make more efforts to recruit and appoint pro bono counsel in this case, as those efforts have been exhaustive already.  Ms. Francis has made unfounded accusations against the Clerk's office and both volunteer attorneys who had been appointed to assist her from the Pro Bono Panel.  The appointment of

7

> counsel is a privilege in a civil case, and the pool of
> volunteer pro bono attorneys is neither wide nor deep.
> The Clerk's Office has expended two months of efforts in
> finding pro bono counsel for Plaintiff.  Other civil
> cases also await pro bono appointments, with the demand
> always exceeding the supply of volunteers who are willing
> and able to tackle federal civil litigation at no cost to
> the plaintiff.

(Docket Item 87 at 5.)

Thereafter, in an Opinion and Order dated January 12, 2009

[Docket Items 100 and 101], the Court denied Plaintiff's motion

seeking recusal of the undersigned,[3] reconsideration of the

Court's prior Opinions, and an order holding Defendants in

contempt.[4]  The Court likewise explained the impact of

---

[3]  As the Court explained in its January 12, 2009 Opinion,
the majority of Plaintiff's misgivings concerning the undersigned
were directed at the Court's legal rulings, which "almost never
constitute a valid basis for a bias or partiality motion."
LoCascio v. United States, 473 F.3d 493, 495 (2d Cir. 2007)
(citation omitted).  As to Plaintiff's false accusations
regarding nonexistent contacts between the undersigned and the
attorneys appointed to assist Plaintiff in prosecuting her
claims, the Court explained that "Plaintiff's statements about
contacts between the Court and appointed counsel are untrue, and
such manufactured or imagined contacts cannot demonstrate 'a
personal bias or prejudice concerning a party.'"  (Docket Item
100 at 10) (quoting 28 U.S.C. § 455(b)(1)).

[4]  In its January 26, 2009 Order, the Court, noting that
Plaintiff had sought to appeal its Order denying Plaintiff's
motion for recusal, reconsideration, and contempt, explained:

> Although generally "the timely filing of a notice of
> appeal is an event of jurisdictional significance,
> immediately conferring jurisdiction on a Court of Appeals
> and divesting a district court of its control over those
> aspects of the case involved in the appeal," an exception
> exists where a litigant seeks to appeal an order that is
> patently non-appealable.  Venen v. Sweet, 758 F.2d 117,
> 120 (3d Cir. 1985) (citation omitted).  As the Court of

Plaintiff's rejection of the two court-appointed attorneys upon
the Court's prior requirement that Plaintiff file a more definite
statement:

> Because no entry of appearance of pro bono counsel will
> transpire in this case, . . . the Court will modify its
> Order regarding the deadline for Plaintiff to file a
> second amended complaint, and require that Plaintiff file
> a pleading that complies with the Federal Rules of Civil
> Procedure and the directives set forth in the Court's
> October 7, 2008 Opinion within twenty (20) days of the
> entry of the Order accompanying this Opinion.

(Docket Item 100 at 18-19.)  Thus, the Court gave Plaintiff yet
another opportunity to comply with the October 7, 2008 directive
to file a more specific pleading.

---

> Appeals has explained, "the jurisdiction of the lower
> court to proceed in a cause is not lost by the taking of
> an appeal from an order or judgment which is not
> appealable," because "a contrary conclusion would enable
> a litigant temporarily to deprive a district court of
> jurisdiction at any non-critical or critical juncture
> including trial itself, thus bringing proceedings in the
> district court to a standstill while a non-appealable
> ruling wends its way through the appellate process." Id.
> at 121 (citations omitted).

(Docket Item 110 at 2-3.)  The Court thus declined to stay
proceedings in this matter and reemphasized that "Plaintiff must
file a second amended complaint consistent with the Court's
Opinions of October 7, 2008 and January 12, 2009 no later than
February 2, 2009 . . ." (Id. at 3.)  Additionally, in its
February 13, 2009 Memorandum Opinion and Order [Docket Items 122
and 123], the Court denied Plaintiff's application for leave to
appeal in forma pauperis, explaining that "[i]f it appears from
the record that the order sought to be reviewed is not
appealable, the conclusion is warranted that the appeal is not
taken in good faith." Javor v. Brown, 295 F.2d 60, 61 (9th Cir.
1961).

Plaintiff filed no such pleading.[5]  On January 30, 2009,
Plaintiff filed a document styled as the parties' "Joint Final
Pretrial Order,"[6] (Docket Item 115), which again contains almost
no factual allegations and, like her Complaint, "is so vague or
ambiguous that [Defendants] cannot reasonably prepare a
response."  Fed. R. Civ. P. 12(e).  Indeed, this submission only
further confounds matters, to the extent that it characterizes
Plaintiff's claims as targeting Defendants' "unethical conduct
that has illegally preserved [their] dominance of the PC
operating systems market and that threatens illegally to extend
that dominance to other markets."  (Docket Item 115 at 1.)  In
the more than three-year history of this case, there has never
been any suggestion that Plaintiff sought to assert an antitrust
claim.

On February 13, 2009, the Court entered an Order [Docket
Item 124] in which it noted that Plaintiff had failed to comply

_____

[5]  Plaintiff did file a series of letters relating to her
"application for a writ of mandamus" [Docket Item 80].  In her
letters, Plaintiff has informed the Court that "the Writ of
mandamus is going to be heard in the United States Court[] of
Appeal[s] and not the United States District Court."  (Docket
Item 99 at 1.)  Plaintiff has accordingly asked that the Clerk to
"dispose of the writ of mandamus."  (Id.)  The Court has
construed Plaintiff's letters as indicating her intent to
withdraw her application, to the extent that the application was
filed before this Court, and the Court has, consistent with
Plaintiff's wishes, taken no action with regard to the mandamus
application.

[6]  Defense counsel did not sign, and does not appear to have
consented to, the contents of this document.

10

with its multiple prior Orders requiring that she file a second
amended complaint by February 2, 2009.  The Court again, <u>sua
sponte</u>, extended another opportunity to Plaintiff to comply,
again indicating to Plaintiff the necessity and simplicity of
what she was required to do.  The February 13, 2009 Order
provided:

> Out of an abundance of caution, however, in order to
> avoid any misunderstanding regarding Plaintiff's
> obligations under the Court's orders, the Court will
> afford Plaintiff <u>one final period</u> of ten (10) days from
> the entry of this Order to file a second amended
> complaint that conforms with the directives set forth in
> the Court's Opinions of October 7, 2008 and January 12,
> 2009.  As the Court has made clear on multiple occasions,
> if Plaintiff fails to comply with the Court's requirement
> that she file a more definite statement, the Court will
> "strike the pleading" and dismiss this case[,] Fed. R.
> Civ. P. 12(e), <u>which Plaintiff can avoid by simply filing
> a Second Amended Complaint that complies, as all
> pleadings must, with the Federal Rules of Civil
> Procedure</u>, within this extended time period of ten (10)
> days from the date of entry of this Order.

(Docket Item 124 at 2-3) (emphasis added).

On February 23, 2009, Plaintiff wrote to the Court to
"defend her point for a fourth time of why she feels she doesn't
have to amend her complaint."  (Docket Item 126 at 1.)
Plaintiff's letter indicates that she believes that the Court of
Appeals has already determined that her Amended Complaint is
sufficiently specific to state a claim.[7]  (<u>Id.</u> at 2.)

_____

[7]  The Court has on numerous occasions attempted to clear up
Plaintiff's misunderstanding concerning the ruling of the Court
of Appeals [Docket Items 50 and 63], but Plaintiff continues to
argue that the Court of Appeals determined that her Amended

Also on February 23, 2009, Plaintiff filed a document entitled "informal brief responses" [Docket Item 127].[8]  This document, which appears on this Court's Docket but which is directed to the Court of Appeals, contains somewhat more detailed allegations than have Plaintiff's prior pleadings.  In particular, under the section entitled "Statement of facts," Plaintiff alleges that she was "the only female in her section and [was] treated very poorly" and subjected to a "hostile environment"; that "the agency prevented [her] promotion by intentionally holding [her] promotion packet and not forwarding it to National Guard Bureau"; that she "filed [] EEO and IG complaints in regards to not being promoted"; and that "appellees retaliated against [her]" for filing such complaints.  (Docket Item 127 at 2.)

Recognizing that the submissions of pro se litigants are to be construed liberally and that the "informal brief responses" document, although directed to the Court of Appeals and not to the District Court, contained somewhat more detailed allegations

_____

Complaint contains sufficient factual matter to comply with Rule 8's pleading requirements.  The Opinion of the Court of Appeals speaks for itself: "the District Court may wish to examine the complaint for compliance with Federal Rule of Civil Procedure 8." (App. No. 06-4246, Mar. 3, 2008 Opinion at 4.)

[8]  Plaintiff filed an amended version of this document on February 24, 2009 [Docket Item 128].  The factual allegations in the amended document are substantially similar to those contained in the original.

than does the Amended Complaint, the Court entered an Order
"seek[ing] guidance from the parties as to whether it should
construe Plaintiff's 'informal brief responses' [Docket Item 127]
as a Second Amended Complaint." (Docket Item 137 at 4.)  The
Court ordered that the parties file submissions to address
"whether the Court should construe Plaintiff's 'informal brief
responses' as a Second Amended Complaint responsive to this
Court's Orders of October 7, 2008, January 12, 2009, and February
13, 2009." (Id.)  The Court thus granted Plaintiff yet another
opportunity to clarify her pleadings by deeming the "Statement of
Facts" as her Second Amended Complaint, in case that was
Plaintiff's intention in providing it to the Court of Appeals.
The parties each answered the Court's question in the negative
[Docket Items 138 and 139],[9] meaning that, in the year since this
matter was remanded, notwithstanding the Court's multiple orders
calling upon Plaintiff to file a second amended complaint and its
efforts to explain to Plaintiff how she can bring her pleadings
into conformity with the requirements of the Federal Rules of
Civil Procedure, Plaintiff has prepared no pleading in this
matter that complies with the Court's orders.  She has refused at
least four additional opportunities to comply with this Court's

---

[9]  In particular, Ms. Francis writes, "**NO JUDGE SIMANDLE
SHOULDN'T CONSTRUE PLAINTIFF'S INFORMAL BRIEF RESPONSES AS SECOND
AMENDED COMPLAINT.**"  (Docket Item 139 at 1) (emphasis and
capitalization in original).

Rule 12(e) orders.

## III.  DISCUSSION

### A.    Standard of Review

Although "it is a power which is not to be exercised lightly," Rule 12(e) "confers power upon a court to dismiss a claim for failure to amend the pleadings as directed." Schaedler v. Reading Eagle Publication, Inc., 370 F.2d 795, 797-98 (3d Cir. 1967).  With regard to the ability of courts to dismiss actions in which a litigant refuses to comply with court orders, one district court in this Circuit has noted:

> The inherent power [to dismiss a case] arises from the very nature of the judicial institution, and is incidental and necessary to the fair and efficient operation of the courts.  Thus, the power of the courts to impose silence, decorum, and respect, and to require submission to rules of fair play is universally acknowledged to be vested in courts so as to achieve the orderly and expeditious disposition of cases.

Derzack v. County of Allegheny, 173 F.R.D. 400, 411 (W.D.Pa. 1996), aff'd without op., 118 F.3d 1575 (3d Cir. 1997) (citations and quotations omitted).

As the Court of Appeals has repeatedly emphasized, however, in light of the strong presumption in favor of trying cases on their merits, see Scarborough v. Eubanks, 747 F.2d 871, 878 (3d Cir. 1984), courts must exercise extreme caution before dismissing a case for failure to comply with court orders.  See Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 869 (3d Cir. 1984); see also Bowers v. National Collegiate Athletic

14

Ass'n, 564 F. Supp. 2d 322, 333 (D.N.J. 2008).  In the context of
the dismissal of a case on account of a party's failure to comply
with discovery orders, the Court of Appeals explained that six
factors must figure into a court's consideration of dismissal:

> [The court must consider]: (1) the extent of the party's
> personal responsibility; (2) the prejudice to the
> adversary caused by the failure to meet scheduling orders
> and respond to discovery; (3) a history of dilatoriness;
> (4) whether the conduct of the party or the attorney was
> willful or in bad faith; (5) the effectiveness of
> sanctions other than dismissal, which entails an analysis
> of alternative sanctions; and (6) the meritoriousness of
> the claim or defense.

Poulis, 747 F.2d at 868 (emphasis omitted).  Although Poulis was
decided in the context of a court's imposition of discovery
sanctions, this Court will apply these same factors in
considering the significance of Plaintiff's protracted refusal to
file a more definite statement, recognizing, as always, that "the
resolution of any doubts [must be] in favor of adjudication on
the merits."  United States v. $8,221,877.16 in U.S. Currency,
330 F.3d 141, 162 (3d Cir. 2003) (citation omitted).

### B.   Prejudice to Adversaries

The Court begins by reviewing "the prejudice to the
adversary caused by the failure [to comply with the Court's
orders]," Poulis, 747 F.2d at 868, because this factor puts into
context the impasse into which Plaintiff's extended recalcitrance
has placed Defendants and the Court.  As the Court explained,
supra, and discussed in its original Opinion calling upon

15

Plaintiff to file a more definite statement [Docket Item 62], the
Amended Complaint in this matter contains almost no factual
allegations to which Defendants can reasonably be expected to
respond.  Rather than "alleg[ing] _facts_ that raise a right to
relief above the speculative level," Bell Atl. Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (emphasis added),
Plaintiff's Amended Complaint contains nothing more than "labels
and conclusions,"[10] id., precisely the sort of laundry list of
unspecified grievances that courts have long recognized fails to
comply with Rule 8(a)'s requirement that a complaint contain "a
short and plain statement of the claim showing that the pleader
is entitled to relief."  Fed. R. Civ. P. 8(a).

    The Court of Appeals, (App. No. 06-4246, Mar. 3, 2008
Opinion at 4), and this Court recognized the shortcomings in
Plaintiff's Amended Complaint, and so when Defendants moved for a
more definite statement, arguing that they could not in good
faith respond to Plaintiff's skeletal pleading without risking

_____

    [10]  The Amended Complaint contains the following
allegations, with no factual elaboration:

        Denied me the right to Freedom of Information Act (FOIA),
        Reprisal, Harassment, discrimination, not given an equal
        employment opportunity, retaliation, wasn't given a
        hearing for the adverse action against me, Breach of
        contract, defamation of character, denied promotion,
        didn't complete the procedures outlined in NGR 600-
        22/ANGI 36-3, didn't meet time frame to investigate
        complaint, unauthorized officer filed documents.

(Am. Compl. at 1-2.)

prejudice, the Court ordered that Plaintiff file a second amended
complaint that set forth "what each Defendant allegedly did to
Plaintiff and how Plaintiff was harmed by such conduct."  (Docket
Item 62 at 10.)  As the extensive history of this case reviewed
supra makes apparent, Plaintiff has adamantly refused to file
such a pleading, notwithstanding the Court's multiple orders
explaining the need for such a filing and calling upon Plaintiff
to explain the nature of her claims [Docket Items 101, 110,
124].[11]  Plaintiff's unwillingness to file a pleading that
complies with the Court's orders for a more definite statement
makes plain that "the prejudice to the adversary caused by the
failure [to comply with the Court's orders]," Poulis, 747 F.2d at
868, is extreme.  This is because Defendants cannot, without
being prejudiced, defend against the claims of a party whose
allegations consist of no more than a recitation of "labels and

---

[11]  As noted above, Plaintiff asserts in her February 23,
2009 letter to the Court that she does not have to file a second
amended complaint because she believes that the Court of Appeals
has already determined that her pleadings state a claim.  (Docket
Item 126 at 1.)  The Court has attempted to clear up this
misconception of multiple occasions, to no avail.
    Plaintiff also states in her February 23, 2009 letter that
she has "on several occasions informed the court and the
defendants of the charges against the defendants," (Docket Item
126 at 1), referring the Court to various letters in which
Plaintiff complains of perceived misconduct by former defense
counsel.  These letters do not clarify the nature of Plaintiff's
allegations against Defendants, and, equally importantly, the
Court has already explained to Plaintiff that she "may not amend
[her] complaint through arguments in [her] brief."  Shanahan v.
City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996).

conclusions." Twombly, 127 S. Ct. at 1965.  In light of
Plaintiff's repeated refusal to expand her pleadings beyond such
labels and conclusions, considerations of prejudice to Defendants
thus weigh in favor of dismissal.  Poulis, 747 F.2d at 868.

### C.   Plaintiff's Personal Responsibility

The same is true of the remainder of the Poulis factors.
First, as to "the extent of the party's personal responsibility,"
id., the responsibility for the repeated failure to comply with
the Court's orders calling for a more definite statement rests
squarely with Ms. Francis.  Recognizing that Plaintiff is
proceeding pro se, the Court has made every effort to permit her
to prosecute her claims, from explaining what she must do in
order to bring her pleadings into compliance with the Federal
Rules of Civil Procedure, (Docket Item 62 at 10), to extending
repeated chances to file such a compliant pleading [Docket Items
63, 101, 110, and 124], to appointing multiple volunteer
attorneys to assist Ms. Francis pro bono in the prosecution of
her claims [Docket Items 64, 70, and 71].  Having rejected the
services of pro bono counsel, as well as the explanations from
the Court as to how she could bring her pleadings into compliance
with the Federal Rules of Civil Procedure, Ms. Francis bears
exclusive "personal responsibility" for her refusal to comply
with the Court's orders.  Poulis, 747 F.2d at 868.  Further, the
Plaintiff is the person who must explain what her accusations

18

against the Defendants are.  Only the Plaintiff can give notice
to each Defendant of what she claims each did to her.  This
factor thus weighs heavily in favor of dismissal.

      **D.   History of Dilatoriness**

      Plaintiff likewise has "a history of dilatoriness," which
has caused this litigation to grind to a halt before it left the
gate.  Id.  The Court first ordered Ms. Francis to file a more
definite statement more than five months ago on October 7, 2008
[Docket Item 63], the filing of which the Court postponed until
pro bono counsel entered an appearance on Plaintiff's behalf.
Plaintiff thereafter rejected the services of two volunteer
attorneys, in light of which the Court "modif[ied] its Order
regarding the deadline for Plaintiff to file a second amended
complaint," calling upon Plaintiff herself to "file a pleading
that complies with the Federal Rules of Civil Procedure and the
directives set forth in the Court's October 7, 2008 Opinion" by
February 2, 2009.  (Docket Item 100 at 18-19.)  Plaintiff
responded with a letter in which she indicated that she would not
file a second amended complaint, reasserting her belief that the
Court of Appeals "determined that plaintiff stated a claim,"
(Docket Item 120 at 1), a misconception that the Court has
consistently (but, apparently, unsuccessfully) attempted to clear
up.  (Docket Item 50 at 1; Docket Item 62 at 10 n.7.)  The Court
afforded Plaintiff "one final period of ten (10) days" to comply

19

with the order for a more definite statement, (Docket Item 124 at
2), to which Plaintiff responded with a letter in which she
"defend[ed] her point for a fourth time of why she feels she
doesn't have to amend her complaint."  (Docket Item 126 at 1.)
The Court then solicited Plaintiff's input as to whether her
"informal brief responses," which contained somewhat more
specific contents than did any prior filing, should be construed
as a second amended complaint, (Docket Item 137 at 4), to which
Plaintiff answered firmly in the negative.  (Docket Item 139 at
1.)

     As this protracted history makes abundantly clear, "this
litigation has been characterized by a consistent delay by
[Plaintiff]," and this action is manifestly not a situation in
which "there was only one failure to comply in a timely manner."
Poulis, 747 F.2d at 868.  Plaintiff's history of refusing to
comply with the Court's orders is lengthy, indicating that the
third Poulis factor weighs in favor of dismissal.

     **E.   Willfulness**

     Most critically, Plaintiff's own filings make unmistakably
plain that her refusal to comply with the Court's orders that she
file a more definite statement is "willful or in bad faith."
Id.; see also Estate of Spear v. C.I.R., 41 F.3d 103, 111 (3d
Cir. 1994) ("In the jurisprudence of dismissal, willfulness or
bad faith is almost always required in order for dismissal to be

20

within the proper scope of the court's discretion.").  As

Plaintiff's submissions to the Court make clear, this is not a

case in which a pro se party has merely been negligent in meeting

deadlines or submitting a pleading that complies with the Federal

Rules of Civil Procedure; pro se parties' submissions are, of

course, treated leniently, and if this were an instance of mere

"failure to move with . . . dispatch," Adams v. Trustees of New

Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863, 875

(3d Cir. 1994) (citation omitted), or confusion over the pleading

requirements imposed by the Federal Rules of Civil Procedure,

dismissal would not be called for.

Plaintiff's repeatedly stated refusal to comply with the

Court's orders is willful.  In a series of letters and other

filings [e.g., Docket Items 120, 126, 139], Plaintiff makes clear

that she understands that the Court has ordered her to file a

more definite statement, but that she does not believe that the

Court had the authority to impose such a requirement, or that she

is simply unwilling to comply with the Court's orders because she

disagrees with them.[12]  That Plaintiff's refusal to comply with

the Court's orders is rooted in her convictions concerning the

scope of the Court's authority or her opinions regarding the

Court's legal decisions does not render her recalcitrance any

less willful, particularly in view of the Court's extensive

---

[12]   See Note 7, supra.

21

efforts to explain the status of the case, the impact of the decision of the Court of Appeals, and the pleading requirements of the Federal Rules of Civil Procedure.  The willfulness manifested in Plaintiff's sustained refusal to comply with the Court's orders calling upon her to file a more definite statement weighs firmly in favor of dismissal.  <u>Poulis</u>, 747 F.2d at 868.

### F.   Availability of Alternative Sanctions

The fifth <u>Poulis</u> factor requires the Court to assess the availability of alternative sanctions short of dismissal, <u>id.</u> at 868, in recognition of the fact that "[d]ismissal must be a sanction of last, not first, resort."  <u>Id.</u> at 869.  This factor likewise weighs in favor of dismissal, as the Court has undertaken extensive efforts to enable Plaintiff to pursue her claims, all to no avail.  Initially, the Court granted Plaintiff's application for pro bono counsel, and, after Plaintiff determined that she would not work with the first attorney who was appointed on her behalf, the Court determined that it would "make one final attempt to locate pro bono counsel for Ms. Francis."  (Docket Item 70 at 1.)  Plaintiff rejected the services of Mr. Corrado, the second attorney, falsely accusing Mr. Corrado and the undersigned of discussing her case.  (Docket Item 87 at 4.)

After Plaintiff rejected the services of two volunteer attorneys, the Court afforded Plaintiff numerous opportunities to

file a more definite statement [Docket Items 101, 110 and 124], made clear what minimal steps Plaintiff needed to take in order to be able to prosecute her claims, (Docket Item 62 at 10-12; Docket Item 100 at 15-16), and informed Plaintiff in no uncertain terms that if she failed to comply with the Court's requirement that she file a more definite statement, it would "strike the pleading" and dismiss this case, pursuant to Fed. R. Civ. P. 12(e).  (Docket Item 62 at 13; Docket Item 124 at 2-3.)  Having undertaken extensive and varied efforts to enable Plaintiff to prosecute the remaining injunctive claims in this case to no avail, the Court is constrained to conclude that no alternative to dismissal exists.  Poulis, 747 F.2d at 868.  The Court is mindful that dismissal is a sanction of last resort, id. at 869, but the Court has exhausted the tools available to it to permit Plaintiff to pursue her claims.  The fifth Poulis factor weighs in favor of dismissal.

Moreover, this dismissal is not just a well-warranted sanction; it is a recognition that there simply is no way this case can proceed under the rules without a basic complaint.

### G.   Meritoriousness of Claims

The Court must finally consider the meritoriousness of Plaintiff's claims.  Id. at 868.  "A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or

23

would constitute a complete defense." Id. at 869-70.  Any
remaining claims would be for injunctive relief, since the Court
of Appeals affirmed dismissal of all non-injunctive claims.  Her
existing pleading, as pointed out many times, contains no short,
plain statement of her claims showing that she is entitled to
injunctive relief, as required by Rule 8(a)(2), Fed. R. Civ. P.
By definition, the present Amended Complaint does not show
meritoriousness when one cannot divine what the claims are.  In
light of Plaintiff's refusal to "allege facts that raise a right
to relief above the speculative level," as opposed to the "labels
and conclusions" which currently make up the Amended Complaint,
Twombly, 127 S. Ct. at 1965, the Court cannot conclude that her
claims are meritorious.  Because Plaintiff's allegations consist
almost exclusively of a list of grievances without supporting
factual allegations – e.g., "Reprisal, Harassment,
discrimination," (Am. Compl. at 1) – the Court cannot conclude
that these mere labels "would support recovery by plaintiff" if
"established at trial."  Poulis, 747 F.2d at 869-70.  In light of
Plaintiff's refusal to plead allegations from which it could be
determined whether her claims have merit, the Court concludes
that the final Poulis factor tilts in favor of dismissal.

IV.  **CONCLUSION**

Although "it is a power which is not to be exercised
lightly," Rule 12(e) "confers power upon a court to dismiss a

claim for failure to amend the pleadings as directed."

Schaedler, 370 F.2d at 797-98.  Recognizing that "[d]ismissal

must be a sanction of last, not first, resort, Poulis, 747 F.2d

at 869, the Court has reviewed the factors identified by the

Court of Appeals which bear upon the dismissal of an action for

failure to comply with the Court's orders, and has concluded that

each of the factors weighs in favor of dismissal.  In light of

this analysis, and in view of Plaintiff's sustained and willful

refusal to comply with the Court's orders calling upon her to

file a more definite statement, the Court will dismiss this

action.  The accompanying Order will be entered.


**March 19, 2009**                      **  s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        United States District Judge